J-S52014-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JEFFREY STETTER, | |
| Appellant | No. 1877 WDA 2014 |

Appeal from the PCRA Order October 7, 2014
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0002814-2006

BEFORE:  SHOGAN, OLSON, and WECHT, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED OCTOBER 22, 2015**

Appellant, Jeffrey Stetter, appeals from the order denying his petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.

On direct appeal, a prior panel of this Court summarized the factual and procedural history of this case as follows:

> The relevant facts and procedural history are as follows: Appellant was arrested, and represented by counsel, he proceeded to a bench trial with co-defendant George Maxwell.[2] At the trial, sixty-five-year-old Richard Sharp testified that, on September 18, 2005, he was camping at 14 Zimmerman Avenue in Overbrook with Stacey Bulford, who was a known prostitute. At approximately 8:00 p.m., he left the camping trailer; however, Ms. Bulford remained inside of the trailer.  At approximately 9:30 p.m., Mr. Sharp returned to the camping trailer, and he testified as follows regarding what transpired upon his return:

**Q:** And what did you do upon returning to the trailer?
**A:** I opened the door.
**Q:** Which door?
**A:** There's only one door. It's a side door.
**Q:** Okay. Was the door locked or unlocked when you arrived?
**A:** It was unlocked.
**Q:** Now, tell the Judge in your own words what you experienced.
**A:** Okay. I walked into the camper, walked up like one step, two steps.  I got [*sic*] hit over the head with I don't know what; and I fell [on]to the ground; and I continually got [*sic*] hit on the head and kicked.  I fought back as best as I could.
**Q:** At what location were you in the inside of the trailer when this occurred?
**A:** It's a room that's called the kitchen. It's like—I fell right like under by the table, kitchen table.
**Q:** You were knocked to the floor?
**A:** Yes.
**Q:** Were you able to see anybody in and around you when you were knocked to the floor?
**A:** There was [*sic*] two male sil[h]ouettes.
**Q:** Two male sil[h]ouettes?
**A:** Yes.
**Q:** Were you able to see faces associated with those?
**A:** No.
**Q:** What was the lighting conditions in that particular room where this assault occurred?
**A:** It was dark, because when I left, the battery that powered the lights in the camper trailer was [*sic*] almost dead.  When I came back, it was dead, and there were no lights in the camper trailer.
**Q:** Now, other than being struck and kicked, was there anything else done to you when you were on the floor?
**A:** They stole the waist pack that I had that had pepper spray in it and what's called a Myotron, looks like a super stun gun.

**Q:** That was attached to what part of your body?
**A:** Around my waist.

Mr. Sharp testified that Ms. Bulford was in the trailer during the attack, and the men fled the scene after the attack. Mr. Sharp called 911, resulting in the police's arrival upon the scene, and due to the severity of his injuries, Mr. Sharp was taken to a nearby hospital where he received treatment for multiple cuts. Mr. Sharp admitted that he brought Ms. Bulford to the trailer and paid her for sex, and he had done so with other women, including Mary Laurence. Mr. Sharp testified that, after the police had identified Ms. Bulford as a possible accomplice, Ms. Bulford identified Mr. Maxwell and Appellant as the men who had assaulted Mr. Sharp.

Ms. Bulford confirmed that she was at Mr. Sharp's camping trailer on the day in question, and at some point, he left the trailer while she stayed behind sleeping in the bedroom. After Mr. Sharp left, Ms. Laurence came into the trailer, awoke Ms. Bulford, and told her "not to worry about what [she was] about to see." Ms. Laurence then left the trailer and Ms. Bulford went back to sleep. Shortly thereafter, she heard Mr. Sharp screaming and she testified the following transpired:

**Q:** And when you heard that screaming what did you do?
**A:** I jumped up and asked, yelled, what was going on to [Mr. Sharp], and flicked on the light.
**Q:** And when you did that, what, if anything, did you observe?
**A:** I had seen [Mr. Sharp] on the floor, bloody, and two males running out of the trailer.
**Q:** And did you recognize the two males?
**A:** Yes.
**Q:** And who were they?
**A:** George Maxwell and [Appellant] Jeff Stetter.

Ms. Bulford then positively pointed out Mr. Maxwell and Appellant in court as the men she had observed running out of the trailer on the night in question. Ms. Bulford admitted that she has prior convictions for forgery, receiving stolen property, and theft by unlawful taking. She further admitted that she uses aliases, was a heroin addict, and received money from Mr. Sharp in exchange for sex. Furthermore, she admitted that she did not

tell the police the name of Mr. Sharp's attackers until approximately one month after the incident occurred.

Detective William Friburger testified that, on September 18, 2005, at approximately 9:30 p.m., he responded to a 911 call at a trailer park on Zimmerman Street. Upon arrival, Mr. Sharp, who was bleeding, reported he had been robbed. Referring to his report, Detective Friburger testified that, on the night of the incident, Ms. Bulford reported that she "did not see anything" and was in a back room when the assault occurred.

Ms. Laurence testified that, on September 18, 2005, she, Mr. Maxwell, Appellant, and a woman were together smoking crack cocaine in a car. Needing more money, Ms. Laurence indicated she would ask Mr. Sharp for money. The group went to Mr. Sharp's trailer; however, he was not at home, and therefore, they left. A short time later, the group returned to the trailer, and Mr. Maxwell and Appellant went inside to talk to Ms. Bulford while Ms. Laurence and the woman stayed inside of the car. Approximately half an hour later, Mr. Maxwell and Appellant returned to the car. Ms. Laurence noticed Appellant's arm "looked wet" and he threw something in the woods before entering the car. She also noticed that Mr. Maxwell was carrying a "belly bag." The men informed Ms. Laurence that Ms. Bulford had invited them into the trailer and they had a couple of beers. The men further indicated that, at some point, Ms. Bulford said, "Here comes Rich," she shut off the lights, and she directed the men where to stand in anticipation of Mr. Sharp's arrival.

Ms. Laurence admitted that the Commonwealth charged her as a co-defendant and offered her leniency in exchange for her testimony. Ms. Laurence admitted that she uses illegal drugs, Mr. Sharp paid her for sex, she uses aliases, and she has several criminal convictions.

At the conclusion of the Commonwealth's case-in-chief, Appellant's and Mr. Maxwell's attorneys made a motion for judgment of acquittal, which the trial court denied. Thereafter,[3] specifically finding the Commonwealth's witnesses to be credible, the trial court found Appellant guilty of the crimes indicated *supra*.[4]

---

[3] We note the defense put forth no witnesses.

⁴ The trial court also found Mr. Maxwell guilty of robbery, burglary, and criminal conspiracy.

*Commonwealth v. Stetter*, 711 WDA 2010, 30 A.3d 538 (Pa. Super. filed May 13, 2011) (unpublished memorandum at 1-6) (internal citations omitted).

Following Appellant's above-referenced convictions of burglary, robbery, and criminal conspiracy at Criminal Information No. CC 200602814, Appellant was sentenced to the mandatory minimum term of imprisonment of ten to twenty years for the burglary conviction. The sentence was to run consecutively to a seven-to-fourteen-year sentence that Appellant had already begun serving at Criminal Information No. CC 200806982. There were no further penalties imposed at the remaining convictions. Appellant filed a post-sentence motion in which he requested that the ten-to-twenty-year term of imprisonment at the burglary count run concurrently with the term of incarceration previously imposed at No. CC 200806982. The post-sentence motion was denied.

As noted, Appellant filed a direct appeal. The appeal challenged the sufficiency of the evidence, the weight of the evidence, and the fact that the sentence was imposed consecutively rather than concurrently. A panel of this Court denied Appellant's claims and affirmed his judgment of sentence, and on March 1, 2013, the Supreme Court of Pennsylvania denied Appellant's petition for allowance of appeal. *Commonwealth v. Stetter*,

711 WDA 2010, 30 A.3d 538, (Pa. Super. filed May 13, 2012) (unpublished memorandum), *appeal denied*, 63 A.3d 1247 (Pa. 2013).

On May 22, 2014, Appellant filed a *pro se* PCRA petition.[1] Robert S. Carey, Jr., Esquire, was appointed to represent Appellant. On August 27, 2014, Attorney Carey filed a "Motion to Withdraw as PCRA Counsel, Proposed Order Pursuant to Pa.R.[Crim].P. 907, and **Turner/Finley**[2] No-Merit Letter". Judge Machen of the PCRA court granted counsel's request to withdraw and gave Appellant notice of the court's intent to dismiss his PCRA petition. Appellant filed a *pro se* response to Judge Machen's notice of the

_____

[1] A PCRA petition must be filed within one year of the date that the judgment of sentence becomes final. 42 Pa.C.S. § 9545(b)(1). A judgment of sentence "becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3). Here, U.S. Supreme Court review could have been sought within ninety days of March 1, 2013. U.S. Sup. Ct. R. 13. Thus, Appellant had until May 30, 2013, to seek additional review, and until May 30, 2014, to timely file a PCRA Petition.

Appellant's *pro se* PCRA petition is docketed as filed on June 5, 2014. Attached to the *pro se* filing, however, is a certificate of service from Appellant that he placed his petition in the prison mail system on May 22, 2014. Pursuant to the "prisoner mailbox rule," this petition would be timely filed. **See Commonwealth v. Crawford**, 17 A.3d 1279, 1281 (Pa. Super. 2011) ("Under the prisoner mailbox rule, we deem a *pro se* document filed on the date it is placed in the hands of prison authorities for mailing."). Thus, we agree with the trial court's conclusion that "[t]he necessary quantum of evidence is before this Court to rule that [Appellant's] PCRA was timely filed based upon his Certificate of Service." PCRA Court Opinion, 2/11/15, at 5 n.1.

[2] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

court's intent to dismiss. By order entered October 7, 2014, Judge Machen dismissed Appellant's PCRA petition.

On November 3, 2014, Appellant filed a *pro se* notice of appeal to this Court.[3] On November 18, 2014, this case was assigned to Judge Joseph K. Williams, III following the retirement of Judge Machen. On December 14, 2014, Appellant filed his court-ordered concise statement of errors complained of on appeal. Judge Williams issued a Pa.R.A.P. 1925(a) opinion on February 11, 2015.

Appellant presents the following issues for our review, which we reproduce verbatim:

> 1): P.C.R.A. COUNSEL WAS INEFFECTIVE FOR FAILURE TO RAISE TRAIL COUNSELS INEFFECITIVENESS, FOR FAILURE TO OBJECT TO TRIAL COURTS APPLICATION OF 42 Pa.C.S. 9714 IN SENTENCING PETITIONER TO A MANDATORY MINIMUM OF 10-20 YRS. LAYERED INEFFECTIVE ASSISTANCE OF COUNSEL, WHERE COUNSEL FAILED TO OBJECT TO THE COURT "ERROR" IN SENTENCING.
>
> 1): Ineffective assistance of appeal counsel, counsel failed to investigate after-discovered evidence of commonwealth's key witness perjured testimony.

---

[3] The notice of appeal is docketed as filed with the Superior Court on November 12, 2014. Based on the postage time stamp on Appellant's notice of appeal, however, it appears that the notice was deposited in the prison's mail on November 3, 2014. Thus, we deem Appellant's notice of appeal timely filed pursuant to the "prisoner mailbox rule." **See Crawford**, 17 A.3d at 1281 ("Under the prisoner mailbox rule, we deem a *pro se* document filed on the date it is placed in the hands of prison authorities for mailing.").

2):  Trial counsel was ineffective for failing to unequivocally establish facts at trail which would have proven the commonwealth's key testified falsely.

3):  Ineffective assistance of counsel for failing to investigate the witness's and the alleged co-conspirator, Mary Laurence.

Appellant's Brief at 1, 5.[4]

Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA court's determination is free of legal error. **Commonwealth v. Phillips**, 31 A.3d 317, 319 (Pa. Super. 2011) (citing **Commonwealth v. Berry**, 877 A.2d 479, 482 (Pa. Super. 2005)).  The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. **Id**. (citing **Commonwealth v. Carr**, 768 A.2d 1164, 1166 (Pa. Super. 2001)).

All of Appellant's claims allege ineffective assistance of counsel.  When considering an allegation of ineffective assistance of counsel ("IAC"), counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves that:  (1) the underlying claim is of arguable

---

[4]  Appellant failed to raise all of his issues in a statement of questions involved as required by Pa.R.A.P. 2116.  Three of his issues are raised under the heading "Issues before the court" on page five of Appellant's brief.  The first issue listed above, however, is found on page one of Appellant's brief. Additionally, Appellant has failed to divide the argument section of his brief into as many parts as there are questions to be argued as required by Pa.R.A.P. 2119.  While our review is somewhat hampered by Appellant's failure to comply with these rules, we will address the issues to the extent possible.

merit; (2) counsel had no reasonable basis for his or her conduct; and (3) appellant was prejudiced by counsel's action or omission. **Commonwealth v. Spotz**, 84 A.3d 294, 311 (Pa. 2014). "In order to meet the prejudice prong of the ineffectiveness standard, a defendant must show that there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **Commonwealth v. Reed**, 42 A.3d 314, 319 (Pa. Super. 2012). A claim of ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs. **Commonwealth v. Simpson**, 66 A.3d 253, 260 (Pa. 2013). "The burden of proving ineffectiveness rests with Appellant." **Commonwealth v. Rega**, 933 A.2d 997, 1018 (Pa. 2007).

Appellant first argues that PCRA counsel was ineffective for failing to raise trial counsel's alleged ineffectiveness of failing to object to the trial court's application of 42 Pa.C.S. § 9714 in sentencing Appellant to a mandatory minimum sentence of ten to twenty years. Appellant's Brief at 1. Appellant maintains that the sentencing court had insufficient evidence of Appellant's prior criminal history as is necessary under section 9714. **Id.** at 2.

Pursuant to 42 Pa.C.S. § 9714(a)(1), "[a]ny person who is convicted . . . of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total

confinement. . . ." The PCRA court provided the following analysis in addressing Appellant's claims:

The statutory language [of section 9714] sets up the necessary events which must occur before this recidivist provision can apply. The initial inquiry is the present crime. It must be a crime of violence. Section 9714(g) includes burglary under Section 3502(a)(1) as satisfying that definition. The *Information* did not make reference to a specific sub-section but contained sufficient facts to put [Appellant] on notice that someone was present when the burglary happened. The facts at trial also showed a person was present when [Appellant] entered the trailer. The present crime was a crime of violence under Section 9714(g).

The next area of inquiry is date driven as there is a connection between the present crime and one's criminal past. The present crime of violence was committed on September 18, 2005. So, this date is the cut-off date for any prior convictions. The [c]ourt has reviewed the entire record and, unfortunately, the sentencing guideline form is not part of the court papers. Despite its absence, the record still shows, by circumstantial evidence, that his prior crime of violence happened before September 18, 2005. At sentencing, the prosecutor told the [c]ourt that defense counsel knew that upon conviction the 10 year mandatory would be sought. Transcript, pg. 70. The post-sentence motion filed after sentencing referenced the 10 year mandatory but its focus was on the [c]ourt's exercise of discretion and not some infirmity associated with the mandatory. The absence of argument informs this [c]ourt that [Appellant] was adjudicated guilty of his prior crime of violence before Sept. 18, 2005.

A clear inference from reading the sentencing transcript is that Judge Machen received information about the prior matter. However, those documents are not part of the Clerk of Courts file. However, this Court will take judicial notice of the contents of case #CP-02-CR-10828-1991. *See*, Pa.R.E. 201(f)("[j]udicial notice may be taken at any stage of the proceeding."); Commonwealth v. Tau Kappa Epsilon, 609 A.2d 791 (Pa. 1992). On April 6, 1992, [Appellant] entered a guilty plea to a felony - one robbery wherein he received a sentence of 2 to 5 years. By

- 10 -

every indication, this 1991 matter is the prior, predicate crime of violence that triggered the application of the 10 year mandatory.

So with this discussion behind us, [Appellant's] two, specific arguments can be resolved rather quickly. He first complains that "the burglary conviction upon which the request was based occurred AFTER the acts giving rise to the instant case". *Defendant's Response/Objections to 907 Notice*, pg. 1 -2. [Appellant] has his facts wrong. The prior conviction was a robbery and he was sentenced on that case many years before the present September, 2005 conduct. Transcript, pg. 71 ("So because of a prior robbery, the burglary now, you're invoking the mandatory?"). His other complaint is that the [c]ourt did not require the government to provide proof of the "first strike conviction". The factual record tells a totally different story. Defense counsel knew about the prior conviction and how it would serve as a predicate to the imposition of the mandatory. The trial court received the guidelines from the prosecutor. Transcript, pg. 69. A short time later, the [c]ourt reviewed what precisely the government was asking for. "So because of a prior robbery, the burglary now, you're invoking the mandatory?["] Transcript, pg. 71. The record also shows there was no objection from defense counsel about the prior. The absence is supportive of the [c]ourt's conclusion that the government did, in fact, discharge its burden of proof regarding the prior conviction.

PCRA Court Opinion, 2/11/15, at 7-8.

The Commonwealth agrees that the first degree felony robbery at Criminal Information No. CC 199110828, to which Appellant pled guilty on April 6, 1992, was the prior crime of violence that resulted in the mandated ten-year minimum sentence for the instant burglary. Commonwealth's Brief at 13. As noted, the court may take judicial notice of that prior conviction. *See Commonwealth v. Brown*, 839 A.2d 433, 435 (Pa. Super. 2003) ("A court may take judicial notice of an indisputable adjudicated fact."); *see also* Pa.R.E. 201(b)(2) ("The court may judicially notice a fact that is not

- 11 -

subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). Thus, we agree with the PCRA court's conclusion that there was sufficient evidence of record to establish Appellant's prior conviction for a violent crime as required under section 9714(a)(1). Moreover, because the underlying claim lacks arguable merit, Appellant's claim for ineffective assistance of PCRA counsel fails.

Appellant next asserts that appellate counsel was ineffective for failing to investigate after-discovered evidence related to two of the Commonwealth's main witnesses who Appellant contends perjured themselves at trial. Appellant's Brief at 5. First, Appellant asserts that Commonwealth witness Mary Laurence wrote Appellant a letter after trial stating that she lied at trial, and "followed her attorney's advise [sic] to avoid imprisonment and she would get leniency in exchange for her testimony." *Id.* Appellant argues that PCRA counsel was ineffective for failing to investigate this claim, and instead, filing a "no-merit" letter. *Id.*

We acknowledge that, as a general matter, recantation evidence "is notoriously unreliable, particularly where the witness claims to have committed perjury." *Commonwealth v. D'Amato*, 856 A.2d 806, 825 (Pa. 2004). When seeking a new trial based on alleged after-discovered evidence in the form of recantation testimony, the petitioner must establish that: (1) the evidence has been discovered after trial and it could not have been

obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. *Commonwealth v. Johnson*, 966 A.2d 523, 541 (Pa. 2009).

A review of the note written to Appellant by Ms. Laurence vaguely states that she lied, but it does not specify the content of her alleged fabricated testimony. PCRA Petition, 5/22/14, Attachment. Thus, the lack of specificity makes it unclear as to whether this testimony would compel a different verdict.

Additionally, at trial it was made clear that Ms. Laurence was charged as a co-defendant in the matter and was offered leniency, specifically probation, in exchange for her testimony. N.T., 11/2/09, at 53-57. Ms. Laurence also admitted on cross-examination that she had a history of convictions for crimes that involved dishonesty or false statements and that she had used aliases before. *Id.* at 54-55. Thus, evidence calling into question Ms. Laurence's credibility already had been introduced at trial. Accordingly, we cannot agree that it is likely that the letter would compel a different verdict. Moreover, Appellant states in his PCRA petition that Ms. Laurence is deceased. PCRA Petition, 5/22/14, at 4. The unavailability of Ms. Laurence, coupled with the vague nature of the content contained in her letter, is insufficient to establish that the recantation testimony would likely compel a different result.

Thus, we agree with the PCRA court's determination that the underlying claim has no arguable merit. Because the underlying assertion lacks arguable merit, Appellant has failed to establish a claim of ineffective assistance of counsel.

Appellant next contends that appellate counsel was ineffective for failing to investigate after-discovered evidence pertaining to Stacey Bulford. Appellant's Brief at 6. In support of this claim, Appellant presents the following verbatim explanation:

> Petitioner made an after-discovered evidence on commonwealth key witness Stacy Bulford, she made statements to two men who she was trying to by drugs from that she lied about everything and that the police forced her to do so and so did Mr. Sharp who was supporting her drug habit, These two men informed petitioners brother what was said and stated to him they would testify to this, petitioner brother then notified this petitioner of these events taken place.

Appellant's Brief at 6. In his PCRA petition, Appellant identifies these two men as John Stenger and Donny Ukalettie. PCRA Petition, 5/22/14, at 6-7.

We first note that the proposed testimony is not valid after-discovered evidence because it is merely an attack on Ms. Bulford's credibility. Furthermore, in his no-merit letter, PCRA counsel Attorney Carey stated that during his representation of Appellant, counsel was unable to make contact with any of the following proposed witnesses: William Stetter (Appellant's brother), John Stenger, or Donny Ukalettie. PCRA Counsel No-Merit Letter, 8/27/14, at 10. Thus, the veracity of Appellant's assertion has not been confirmed, and this "after-discovered evidence" is no more than Appellant's

unsupported statement. Because the underlying claim lacks merit, we cannot agree that appellate counsel was ineffective. This claim also fails.

In his next issue, although inartfully pled, it appears that Appellant is attempting to argue that trial counsel was ineffective for failing to argue that evidence presented at trial was insufficient to sustain his convictions. Appellant's Brief at 5, 7. Appellant identifies in his brief inconsistencies in testimony among the witnesses at trial. *Id.* at 7-8. To the extent Appellant is making an insufficiency of evidence argument, we conclude that the underlying claim of insufficiency of the evidence due to the inconsistencies in trial testimony was previously addressed by a panel of this Court, and this Court determined those claims lacked merit. *Commonwealth v. Stetter*, 711 WDA 2010 (unpublished memorandum at 7-10). Because the underlying claim lacks arguable merit, Appellant's claim for ineffective assistance of counsel fails.

In his final issue, Appellant alleges "Ineffective assistance of counsel for failing to investigate the witness's and the alleged co-conspirator, Mary Laurence." Appellant's Brief at 5. Despite identifying this as a separate issue, Appellant fails to provide any argument regarding counsel's failure to investigate "witnesses" or Mary Laurence beyond the arguments he raised in relation to previous issues addressed herein. Because Appellant has failed to develop any argument on this issue, we find this claim waived. *See Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007)

("The failure to develop an adequate argument in an appellate brief may [ ] result in waiver of the claim" under Pa.R.A.P. 2119.).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/22/2015